CASE 14.—ACTION BY THE COMMONWEALTH OF KENTUCKY ON THE RELATION OF THE SHERIFF OF WOODFORD COUNTY AGAINST MORRIS S. GREENBAUM AND OTHERS.—June 17, 1910.

## Commonwealth ex rel Sheriff Woodford County v. Greenbaum, &c.

Appeal from Woodford Circuit Court.

R. L. STOUT, Circuit Judge.

From the judgment the commonwealth appeals.— Reversed.

1.  Taxation—Private Property—Power of State.—The state can tax private property having a situs within its territorial limits, and may require the party possessing it to pay the taxes thereon.
2.  Taxation—Liability.—Under Ky. St. sections 4105, 4109-4111, regulating taxation of whisky in bonded warehouses, an accrued liability for the tax is not defeated by accidental destruction of the whisky.
3.  Taxation—Liability.—Under Ky. St. sections 4105, 4109-4111, regulating the taxation of whisky in bonded warehouses, the owner of the warehouse is liable for the taxes on whisky stored there by others as well as that owned by him individually.
4.  Taxation—Penalty—Basis of Computation.—The 8 per cent. penalty imposed by Ky. St. section 4112, for failing to pay taxes on whisky in bonded warehouses, must be computed upon the principal of the tax due, and not upon the accrued interest thereon.

W. D. JESSE and WALLACE & HARRIS for Commonwealth.

W. P. LINCOLN, RICHARD GODSON and FIELD McLEOD for appellees.

OPINION OF THE COURT BY COMMISSIONER CLAY—Reversing.

Morris S. Greenbaum is the owner and proprietor of a distillery and bonded warehouse in Woodford county, Ky. All of the whisky stored in the warehouse on the assessment dates beginning with September, 1901, and running consecutively up to and including the assessment of September, 1907, together with the warehouse, was destroyed by fire on August 5, 1908. There was stored in the warehouse about 44,000 barrels of whisky. Of this quantity, about 4,000 barrels belonged to the distiller himself. The remaining 40,000 barrels were owned, it is claimed, by nonresidents of the state and by parties whose names were unknown to appellee. The whisky stored in the warehouse on the assessment days was reported by appellee to the Auditor, as required by section 4105, Ky. St., for the years in question, and was assessed against appellee. This action was instituted by the commonwealth of Kentucky, on the relation of the sheriff of Woodford county, to recover of appellee the taxes assessed against appellee on the whisky in question, together with the penalty and interest prescribed by law. The lower court gave judgment in favor of the commonwealth for the taxes due on the whisky actually owned by appellee, but relieved him from the payment of taxes on all whisky for the years in question which he did not personally own at the time of the fire. From this judgment the commonwealth appeals.

The sections of the statute regulating the taxation of whisky in bonded warehouses, necessary to be considered, are as follows:

"Section 4105. Every owner or proprietor of a distillery bonded warehouse in which distilled spirits are stored shall, between the first day of September and the first day of October of each year, report to the Auditor of Public Accounts, in writing, sworn to by the person making the report; or, if the owner or proprietor of such warehouse be a corporation, the report shall be made and sworn to by its principal officer or manager in charge. Such report shall show the quantity and kind of spirits in such warehouse on the first day of September in the year the statement is required to be made, the dates when made, the county, city, town, or taxing district in which the warehouse is situated; whether or not the United States government tax has been paid thereon, if not, the date of the expiration of the bonded period; the fair cash value of the spirits estimated at the price it would bring at a fair voluntary sale, and such other facts pertaining to such spirits as the Auditor may require."

"Section 4109. Any person or corporation having the custody of such spirits on the first day of September in the year the assessment is made shall be liable for all taxes due thereon, together with all interest and penalties which may accrue; and any warehouseman or custodian of such spirits, who shall pay the taxes, interest or penalties on such spirits, shall have a lien thereon for the amount so paid, with legal interest from day of payment."

"Section 4110. Taxes on distilled spirits which may be assessed while in a bonded warehouse, and on which the United States government tax has not been paid, or will not become due before the first day of March after the assessment, shall be due on the second day of January, May and September next

after the said government tax becomes due or be paid, or when the spirits are removed from the warehouse; and the taxes on each year's assessment shall bear legal interest until paid."

"Section 4111. Every owner or proprietor of a bonded warehouse in which distilled spirits may be stored, as contemplated in the preceding section, shall, on the first day of January, May and September next after said government tax shall have been paid, become due, or be removed from the warehouse, make and transmit to the Auditor of Public Accounts and the clerk of the county court in which the spirits may have been at the time of the assessment, a statement sworn to by the person whose duty it is to make the report, showing the quantity of spirits on which the government tax has been paid or has become due, and what spirits have been removed from the warehouse during the preceding four months, the years in which such spirits were assessed for taxation, and the county, city, town, or taxing district in which the warehouse is situated in which the spirits were stored at the time of the assessment, and shall, at the same time, pay all taxes and interests on such spirits due the state, county, taxing district, city or town, to the officers entitled to receive the same. The report herein required shall be made by the owner or proprietor of such bonded warehouse, whether any spirits are stored in such warehouse, or not at the time the report is due."

The contention of the commonwealth on this appeal is that the warehouseman is made primarily responsible for the tax on whisky stored in his warehouse, and that he is liable therefor even though the whisky may have been destroyed. On the other hand, appellee contends that the statute in question makes

him merely the agent of ' the commonwealth in the
collection of the tax; that, while the statute itself does
not so declare, it was the evident purpose of the Leg-
islature to make the warehouseman's liability de-
pend upon the right and power to protect himself
in the payment of such taxes by proceeding against
the property in his possession; and that it would be
spoliation to make him liable for the taxes when, by
reason of the destruction of the property without
fault on his part, and the further fact that he had
no means of ascertaining the true owners, he could
never recover the taxes so paid. It will be observed
that under the provisions of section 4110, Ky. St.,
taxes on distilled spirits, which may be assessed while
in a bonded warehouse and on which the United
States government tax has not been paid, or will not
become due before the first day of March after the
assessment, shall be due on the 2d day of January,
May and September next after the said government
tax becomes due or be paid, or when the spirits are
removed from the warehouse. In interpreting this
section, the courts have held that the destruction of
the whisky by fire while in the warehouse consti-
tutes such a removal as to make the tax due and
payable before the expiration of three years. United
States v. Peace, 53 Fed. 1000, 4 C. C. A. 148. Fur-
thermore, the statutes in question have been held
to be constitutional in a number of cases. Common-
wealth of Kentucky v. E. H. Taylor, Jr., & Co., 101
Ky. 325, 41 S. W. 11, 19 Ky. Law Rep. 552; Thomp-
son v. Commonwealth, 123 Ky. 302, 94 S. W. 654. 124
Am. St. Rep. 362, 29 Ky. Law Rep. 705. The state
of Maryland had a similar act, and this was held to
be constitutional in the case of Monticello Distilling
Co. v. Mayor, etc., 90 Md. 416, 45 Atl. 212. The va-

lidity of this act was also upheld by the Supreme
Court of the United States in Carstairs, etc., v. Coch-
ran, etc., 193 U. S. 11, 24 Sup. Ct. 318, 48 L. Ed. 595.
These cases settle conclusively the question that a
state has the undoubted power to tax private prop-
erty having a situs within its territorial limits, and
may require the party possessing the property to pay
the taxes thereon.  Following the principles above
announced, the Legislature of this state has not only
enacted the statutes making the distiller and bonded
warehouseman liable for taxes on whisky stored with
him, but has also provided a similar regulation  in
regard to all other kinds of personal property. Thus
by sections 4023, 4033, 4052, Ky. St. the possessor
of any and all kinds of personal property is required
to list the same with the assessor for taxation and
is made personally liable for the tax thereon.  When
the tax is paid by the person in possession, he  is
given a right of action against the owner and a lien
on the property for the amount paid.  In the case of
Carstairs v. Cochran, supra, when under considera-
tion by the Court of Appeals of the state of Mary-
land (95 Md. 488, 52 Atl. 601), the argument was
made that the cost of insurance and leakage  might
destroy the value of the warehouseman's lien.  In
discussing that point, the court said:  "We are not
informed  how  these  warehouse  certificates  are
framed, but the distiller may, if he sees fit, have them
so drawn as to impose upon the purchaser, by ex-
press stipulation, the duty of paying to the distiller
at stated periods such amount of money upon each
barrel of spirits held by warehouse certificate as may
be deemed adequate to protect the distiller against
the tax, and to provide for immediate sale in default
of such payment; and it is no answer to this to say

that the government tax must also be paid before such sale can be made, since prompt sale will always insure the immediate reimbursement of both taxes, and will avoid all cost of insurance and risk of leakage urged by the appellants as destructive of all value to the lien given.'' And upon writ of error to the Supreme Court of the United States (Carstairs v. Cochran, etc., 193 U. S. 11, 24 Sup. Ct. 319, 48 L. Ed. 595), the point was made in the same case that the statute did not in express terms give to the distiller and warehouseman, who paid the taxes, a right to recover the interest thereon. In discussing this question, that court said: ''That under federal legislation distilled spirits may be left in a warehouse for several years, that there is no specific provision in the statutes in question giving to the proprietor who pays the taxes a right to recover interest thereon, and that for spirits so in bond negotiable warehouse receipts have been issued, do not affect the question of the power of the state. The state is under no obligations to make its legislation conformable to the contracts which the proprietors of bonded warehouses may make with those who store spirits therein, but it is their business, if they wish further protection than the lien given by the statute, to make their contracts accordingly.''

Thus it will be seen that the imposition and the collection of the tax from the warehouseman is purely a question of power, and does not depend upon whether or not the Legislature has seen fit to provide against every contingency which might result in the warehouseman's failure to collect the tax. Furthermore, when the distiller manufactures and stores the whisky and issues warehouse receipts to his purchasers, he does so knowing that the only

protection he has, so far as the statute is concerned, is the lien given upon the whisky. If he desires additional protection, he must make his contracts accordingly. If he fails to do so, a hardship may result, but it is a hardship against which the Legislature has not provided. While the opinions upon the question speak of the warehouseman as being the agent of the state for the purpose of collecting the tax, it is manifest that the statute makes him something more. The primary liability for the tax is imposed upon him. He is made liable at all events. The statute does not say that if the whisky is destroyed by fire, or his lien is lost in any other manner, he shall be released from liability. To so hold would be to interpolate into the statute a provision which the legislature itself has not seen fit to enact. While it may be a hardship to require appellee to pay the tax in question, it is no greater hardship than that which falls upon the owner of a horse which is assessed in September and immediately dies. In that case the owner has to pay the tax, even though the property is afforded no protection, and he himself cannot enjoy the use of it during the year for which the tax is paid. Nor is it any greater hardship than falls upon the man who sells a piece of business property assessed to him, which is destroyed by fire, and who fails to secure his lien for the deferred payments thereon by taking the necessary steps to procure insurance.

The cases of City of Boston v. Beal (C. C.) 51 Fed. 306, and Stapylton v. Thaggard, 91 Fed. 93, 33 C. C. A. 353, do not in our opinion support appellee's contention that he has been released from all liability for the taxes in question by reason of the fact that he can no longer enforce his lien. In those cases cer-

tain national banks became insolvent and the shares worthless. It was held that the receiver was not liable for the taxes imposed by the state, because he had in his hands no assets with which to pay the same. The opinions in those cases, however, were based upon the fact that Congress had not conferred upon the states the power to tax a bank chartered by Congress, except as to its real property. If under those circumstances the receiver had been compelled to pay a tax, he would have had to pay it out of the assets of the bank upon which the state had no power to impose a tax. The effect would have been to nullify the opinions of the Supreme Court of the United States holding that the states had no power to impose such a tax.

Nor is the case of Knoxville Traction Co. v. Mc-Millen, 111 Tenn. 521, 77 S. W. 665, 65 L. R. A. 296, similar to the case under consideration. There the legislature of the state of Tennessee imposed a tax of $100 upon persons conducting the business of advertising in street cars, and providing that the street car company or railway company which leased or sold such advertising privileges should be liable for the payment of the tax. The court held that the only relation of the two companies was that of creditor and debtor, and that the property of one citizen could no more be taken to pay a tax or public debt due from another than the private debt of such other person.

For the reasons given, we conclude that the trial court erred in holding that appellee was not liable for taxes on whisky other than that which he individually owned. We conclude that the 8 per cent. penalty imposed by section 4112, Ky. St., must be calculated

upon the principal of the tax due, and not upon the accrued interest.

Judgment reversed and cause remanded, with directions to enter judgment in conformity with this opinion.